# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMBER SEEGER and SCOTT ANDERSON**, individually, | : CIVIL ACTION NO. 1:13-CV-0048 |
| Plaintiffs | : |
| v. | : (Judge Conner) |
| **C&S WHOLESALE GROCERS, INC.**, | : |
| Defendant | : |

## MEMORANDUM

Presently before the court in the above-captioned matter is a motion (Doc. 5) to dismiss the complaint (Doc. 1) of plaintiffs Amber Seeger ("Seeger") and Scott Anderson ("Anderson"), filed by defendant C&S Wholesale Grocers ("C&S"). The motion has been fully briefed and is ripe for disposition.

## I. Factual and Procedural Background

Plaintiffs Seeger and Anderson instituted the present action against defendant C&S on January 8, 2013. (Doc. 1). Seeger and Anderson are former employees of C&S, and allege that C&S wrongfully terminated their employment following a 2009 incident at the workplace. (See generally, id.) They now assert various discrimination claims, (see id. at ¶¶ 41-53), and violations of the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA).

Scott Anderson began working at C&S as a slot cleaner on or around December 18, 2006. (Doc. 1 at ¶ 11). Amber Seeger began working at C&S as a

selector on or around March 10, 2008. (Id. at ¶ 10). In early April 2009, Seeger suffered a massive asthma attack, for which she was treated in the emergency room at Hershey Medical Center in Hershey, Pennsylvania. (Id. at ¶ 10). The treating physician determined that anxiety had caused Seeger's asthma attack, and prescribed Seeger the medication Lorazepam. (Id. at ¶ 11). Lorazepam has a number of possible side effects, including depression, suicidal thoughts, difficulty breathing, seizures, anxiety, excitation or agitation, hostility, aggression, rage, insomnia, hallucinations, and allergic reactions. (Id. at ¶ 13). Accordingly, the physician directed Seeger to take a short amount of time off of work to determine what, if any, side effects she would experience. (Id. at ¶ 12).

Before she began taking the Lorazepam, Seeger spoke to Bill Gleason of C&S's human relations department about applying for short-term disability leave while she determined the medication's effect on her. Gleason reviewed documents given to Seeger in the emergency room, and informed Seeger that she should return to work. (Doc. 1 at ¶¶ 16-17). According to Seeger, Gleason denied her time off because side effects are only a possibility when taking Lorazepam, and not a certainty. (Id. at ¶ 17). Seeger returned to work and began taking the medication.

On April 16, 2009, Seeger was outside the C&S facility cleaning around the building and became frustrated with the task. (Id. at ¶¶ 19-20). After losing a ring, she took her 15-minute break to look for it. (Id. at ¶ 21). At the same time, Anderson was also outside on his break. Seeger asserts that she then went into an uncharacteristic fit of rage as a side effect of the Lorazepam. (Id. at ¶ 23). She began

2

yelling at Anderson and tried to deflate the tires on Anderson's truck. (Id. at ¶ 24). Anderson asserts that he did not get involved in Seeger's outburst, did not have physical contact with Seeger during the incident, and did not engage in horseplay; he was a bystander. (Id. at ¶¶ 25-26). Seeger does not entirely remember these events. (Id. at ¶ 24).

After the incident, Seeger was taken to an office inside the building where she was questioned by her superiors at C&S. According to Seeger, C&S employee Will Schmidt told her that she was suspended for a few days, but she still had a job and would receive a call instructing her when to come back. (Id. at ¶ 30). However, on April 21, 2009, Schmidt contacted Seeger and informed her that she was permanently suspended for "breaking a cardinal rule" that employees were not to engage in horseplay or physical contact on company time. (Id. at ¶ 33). Anderson was also fired as a result of the incident on April 21, 2009.

On August 31, 2009, plaintiffs' counsel sent a letter to the United States Equal Employment Opportunity Commission (EEOC), initiating ADA charges against C&S by submitting intake questionnaires on behalf of both Seeger and Anderson. (Doc. 11, Ex. 1). After follow-up paperwork was completed, Anderson formally filed his charge of discrimination with the EEOC on April 20, 2010, (Doc. 11, Ex. 11), and Seeger followed on April 28, 2010, (Doc. 11, Ex. 3). At that time, each included a request to cross-file with the Pennsylvania Human Relations Commission (PHRC) for violations of the Pennsylvania Human Relations Act (PHRA). (Doc. 11, Exs. 3, 11). On January 6, 2011, Seeger received notice that the PHRC had closed

administrative proceedings on her case, along with notice of her right to file a complaint in the Pennsylvania Court of Common Pleas within two years. (Doc. 11, Ex. 5). Anderson received the same notice on November 2, 2011 (Doc. 11, Ex. 13). On May 25, 2011, Seeger received notice of her right to sue from the EEOC. (Doc. 11, Ex. 6). Anderson has not received such a letter. Plaintiffs filed the instant action on January 8, 2013.

C&S now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Defendant argues that Seeger and Anderson's claims are barred because they failed to timely exhaust their administrative remedies. Specifically, it alleges that Seeger's ADA claims are barred because she failed to file suit against C&S within 90 days of receiving her right to sue letter from the Equal Employment Opportunity Commission (EEOC). (Doc. 11 at 3-4). C&S also asserts that Seeger's state claims under the PHRA are untimely because she failed to file a charge with the Pennsylvania Human Rights Commission (PHRC) within the applicable 180-day statute of limitations. (Id. at 2-3). Defendant argues that Anderson's ADA claims should be dismissed on the grounds that Anderson has not yet received a right to sue letter from the EEOC. (Id. at 6-7). They assert that his PHRA claims are untimely because, like Seeger, Anderson failed to file a charge within 180 days of the allegedly discriminatory conduct. (Id. at 6). Finally, C&S argues that counts I and II of plaintiff's claims, ostensibly made pursuant to common law, are preempted by the PHRA. (Id. at 7-8). The court will address each defendant's contentions *seriatim*.

4

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion under Rule 12(b)(6) is the appropriate procedure by which to contest a party's timely exhaustion of administrative remedies. Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997). See also Wilson v. MVM, Inc., 475 F.3d 166, 174-175 (3d Cir. 2007) (finding that timely exhaustion of Title VII administrative remedies is prudential rather than jurisdictional); Anjelino v. New York Times Co., 200 F.3d 74, 87-88 (3d Cir. 1999).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. Discussion

#### A. Timely Filing of ADA and PHRA Charges

The ADA adopts the enforcement procedures of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117. Under Title VII, a plaintiff seeking redress for alleged discrimination must exhaust all administrative remedies before he or she will be allowed access to federal judicial relief. Watson v. Eastman Kodak Co., 235 F.3d 852, 854 (3d Cir. 2000). In Pennsylvania, such exhaustion requires a plaintiff to file a charge of discrimination with the EEOC within 300 days of the challenged employment action.[1] 42 U.S.C. § 2000e-5(e)(1). See also Mikula v. Allegheny County, 583 F.3d 181, 185-86 (3d Cir. 2009); Watson, 235 F.3d at 854 (citing Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1413-15 (3d Cir. 1991) (en banc)). If the EEOC dismisses a charge, it will notify the plaintiff with a "right to sue" letter, after which

---

[1] Under Title VII, plaintiffs residing in states having an agency to grant relief for federally-prohibited employment discrimination must resort to that state remedy before they will be allowed access to federal judicial relief. 42 U.S.C. 42 U.S.C. § 2000e-5(c); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 754-58 (1979). Pennsylvania is one of these deferral states. 43 Pa. Cons. Stat. §§ 955(a), 959; Sharpe v. Pennsylvania Hous. Auth., 693 F.2d 24, 26 (3d Cir. 1982). The ADA generally requires complainants to file with the state agency and to await the state agency's determination, or the passage of 60 days before filing a complaint with the EEOC. 42 U.S.C. § 2000e-5(c). The PHRC has entered into a work-share agreement with the EEOC, pursuant to which the PHRC has waived its right to exclusive jurisdiction over Title VII discrimination cases during the 60-day period. These waivers are self-executing, and allow a complaint which otherwise would have been brought first to the PHRC to be processed immediately by the EEOC if it is first filed with the EEOC. Brennan v. National Tel. Dir. Corp., 881 F. Supp. 986, 993 (E.D. Pa. 1995). Pursuan to this work-share agreement, the aggrieved employee meets the statutory filing requirement for its ADA claims as long as the complaint is filed with the EEOC within 300 days of the alleged discriminatory conduct. Id.

the plaintiff has 90 days to file an action in federal court. 42 U.S.C. 2000e-5(f)(1); Brzozowski v. Corr. Physician Servs., 360 F.3d 173, 180 n. 2 (3d Cir. 2004).

Under the PHRA, a plaintiff must likewise exhaust all administrative remedies before seeking judicial relief. 43 P.S. § 953(h); Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). To do so, he must file a complaint with the PHRC within 180 days of the allegedly discriminatory act. 43 P.S. § 953(h). The PHRC then has exclusive jurisdiction over the claim for one year after its filing, unless the PHRC resolves the claim before the year has elapsed. 43 P.S. § 962(c)(1). If, after one year, the claim has not been resolved, the party has the option to forego the state administrative process and file suit in court. Id. Upon the PHRC's resolution of a claim, the plaintiff has two years to bring an action in court. 43 P.S. §§ 962(c)(1)-(2).

In the matter *sub judice*, it is undisputed that Seeger and Anderson timely initiated administrative proceedings with the EEOC on their ADA claims.[2] C&S

---

[2] C&S originally contested whether plaintiffs had timely filed their ADA claims with the EEOC. (Doc. 7 at 3-5). Upon further briefing, however, it is undisputed that Seeger and Anderson, through counsel, initiated proceedings with the EEOC by filing an intake questionnaire on August 31, 2009. (Doc. 11, Ex. 1). The EEOC acknowledged receipt of the charge on December 9, 2009, docketed it, and assigned it a charge number. (Doc. 10, Ex. B). Included in the EEOC's confirmation was explicit notice that "the EEOC has docketed this matter as a charge, has notified the respondent that this charge has been filed, and has otherwise taken the steps necessary to preserve the charging party's right to file a private civil action with respect to the issues in the charge." (Doc. 10, Ex. B) (original formatting omitted). The EEOC notified C&S of the charge on September 9, 2009. (Doc. 11, Ex. 2). Hence, Seeger and Anderson timely initiated administrative proceedings on their ADA claims. See Federal Express Corp. v. Holowecki, 552 U.S. 389, 401 (2008) (holding that an employee's intake questionnaire to the EEOC could be considered

maintains, however, that plaintiffs' PHRA claims were untimely, coming more than 180 days after C&S terminated their employment. (Doc. 11 at 2). C&S notes that Seeger and Anderson's August 31, 2009 intake questionnaires with the EEOC do not indicate an intent to file a PHRC charge. (Id.) Indeed, the first documents evincing such an intent are the "dual" EEOC and PHRC charges filed for Seeger and Anderson on April 28, 2010 and April 20, 2010, respectively. In response, Seeger and Anderson argue that their initial filing with the EEOC, which fell within both the 300-day and 180-day deadlines, was sufficient to preserve their rights under the PHRA. (Doc. 10 at 5-6).

Under Pennsylvania law, a charge of discrimination filed with the EEOC that has been forwarded to the PHRC pursuant to their work-share agreement is sufficient to satisfy the complaint requirements of the PHRA. Lantz v. Hospital of the Univ. of Pa., No. 96-2671, 1996 U.S. Dist. LEXIS 11154 (E.D. Pa., July 30, 1996) (citing Parsons v. Philadelphia Coordinating Office of Drug & Alcohol Abuse Programs, 833 F. Supp. 1108, 1112 (E.D. Pa. 1993); Lukus v. Westinghouse Elec. Corp., 419 A.2d 431, 452 (Pa. Super. 1980)). However, a claimant may not rely on the work-share agreement to satisfy all of the requirements of the PHRA. Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). Rather, a claimant must show that the PHRC actually received the charge. Id. at 927. It is the transmittal of the claim

---

a charge if the filing can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between employer and employee.").

8

that acts as the filing in those cases, and the date of filing with the PHRC is the date of transmittal. Lantz, 1996 U.S. Dist. LEXIS 11154 at *9; Lukus, 419 A.2d at 451. In this case, Seeger and Anderson did not evince an intent to dual-file until April 28, 2010, and April 20, 2010, respectively, when each filed notice of election to dual file with the PHRC. (Doc. 11, Ex. 3). Plaintiffs admit that the PHRC did not acknowledged receipt of the charge until September 17, 2010. (Doc. 10 at 6). Such evidence strongly suggests that the claim was not transmitted until well after the 180-day deadline of October 18, 2009.

A claimant may not rely on an EEOC intake questionnaire to satisfy the charge requirements of the PHRA. Whether a charge has been filed under the PHRC is a matter of state law. Woodson, 109 F.3d at 925. The Pennsylvania Supreme Court has strictly enforced the PHRA filing requirement, id. at 928, and as our sister court held in the analogous matter Colbert v. Mercy Behavioral Health, "the filing of an intake questionnaire with the EEOC is simply not sufficient to constitute the filing of a charge with the PHRC." 845 F. Supp. 2d 633, 638 (W.D. Pa. 2012). The PHRC would have had no notice of Seeger and Anderson's claims until they elected to dual file in April 2010, which was well-beyond the 180-day limitations period for filing such a claim. The court must therefore dismiss Seeger and Anderson's PHRA claims as untimely.

## B. Timely Availment of Judicial Remedies

C&S also argues that Seeger's ADA claims are barred because she failed to file her claims in court within ninety days of receiving her right to sue letter from the EEOC. (Doc. 11 at 3-4). Seeger received her right to sue letter on May 25, 2011, but did not file this action until January 8, 2013. (Doc. 11, Ex. 6). Seeger argues that because hers was a dual filing with both the EEOC and the PHRC, her administrative remedies were not exhausted until she received the right to sue from both entities. (Doc. 10 at 5-6). She did not receive the PHRC's letter until January 6, 2011 and it is undisputed that she was within the PHRC's two-year period of limitations when she initiated the present action. (Id.)

Title VII provides that, if after 180 days from a claimant's filing with the agency, the EEOC has not resolved the charge, it must notify the complainant, generally through the issuance of a "right to sue" letter, in which the EEOC states that it sees no reason to take action on the complaint. See 42 U.S.C. § 2000e-5(f)(1); Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). After 180 days, the claimant may also request a right to sue letter. The EEOC must issue the letter promptly on request. See 29 C.F.R. § 1601.28(a)(1). The receipt of the right to sue letter indicates that a claimant has exhausted administrative remedies. Nothing compels a claimant to request a right to sue letter or to bring a private action; however, if he chooses to sue, it must be filed within 90 days of the claimant's receipt of the right to sue letter. 42 U.S.C. 2000e-5(f)(1). See Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999).

The 90-day statute of limitations is strictly construed. Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2000). In the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed. Id. (citing Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 176 (3d Cir. 1999). In Burgh, the U.S. Court of Appeals for the Third Circuit expressly denounced the application of a two-year statute of limitations, stating that the 90-day period

> represent[s] the congressional determination of the relevant and proper time limitations under Title VII. The imposition of an additional limitations period is inconsistent, and indeed in direct conflict, with the plain language of the federal statute. . . . The statute by its terms establishes the . . . appropriate time requirements that a complainant must satisfy in order to bring a timely claim.

Burgh, 251 F.3d at 472. Such a strict interpretation of the Title VII limitations scheme "is consistent with Congress's intent that most complaints be resolved through the EEOC rather than by private lawsuits."[3] Id. at 473 (citing Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 366 (1977)). In addition, Title VII and the PHRA's statute of limitations operate independently of each other. Notably, several

---

[3] The rigidity of the 90-day requirement is borne out by the plain language of the right to sue letter itself. The EEOC's letter to Seeger on May 25, 2011 stated clearly "Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different)." (Doc. 7, Ex. 1)(emphasis in original). This clear and emphatic letter provided Seeger ample notice both of her legal rights upon the EEOC's dismissal of her complaint, and of the distinction between her federal and state claims.

11

courts have found that the closure of the PHRC's investigation, does not affect the time a claimant has to file a Title VII claim still pending with the EEOC. See Brzozowski v. Corr. Physician Servs., 360 F.3d 173, 180 (3d. Cir. 2004); Albright v. City of Philadelphia, 399 F. Supp. 2d 575, 583 n.13 (E.D. Pa. 2005) (holding that a right to sue letter from the PHRC does not constitute final agency action by the EEOC); Gokay v. Pennridge Sch. Dist., No. 02-8482, 2003 U.S. Dist. LEXIS 3201 (E.D. Pa. Mar. 3, 2003) ("We are aware of no case in this circuit holding that the closure of a state law administrative case by a state agency triggers the federal Title VII limitations period."). Accordingly, Seeger's claims under the ADA, as filed months after the expiration of her Title VII 90-day deadline, were untimely and are therefore barred.

With respect to Anderson, C&S contends that his ADA claims are defective because he has not actually exhausted his administrative remedies. As mentioned, Anderson has not yet received a right to sue letter from the EEOC, and there is some dispute as to whether they have closed his claim. (See, e.g., Doc. 11 at 5 n.2). Nevertheless, the Third Circuit has held that failure to obtain a right to sue letter, is curable at any point during the pendency of the action. Anjelino v. New York Times Co., 200 F.3d 73, 96 (3d Cir. 1999) (citing Gooding v. Warner-Lambert Co., 744 F.2d 354, 357-59 (3d Cir. 1984)). Accordingly, in this stage of the proceedings, when the court must interpret the facts in the light most favorable to the plaintiff, Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009), the court will accept as true plaintiff's assertion that he has not yet received a right to sue letter as his

claims remain pending. The court will not dismiss Anderson's ADA claims; however, plaintiff should request his right to sue letter without delay. Defendant may renew this motion if the defect is not promptly cured.

### C. Preemption of Common Law Claims

C&S seeks to dismiss counts I and II of the complaint on the grounds that they allege common law claims – for discrimination and wrongful termination, respectively – which are preempted by the PHRA. (Doc. 7 at 7). Plaintiffs do not contest that the PHRA preempts such common law claims, but rather assert that counts I and II were brought pursuant to the PHRA (Doc. 10 at 8). These claims are therefore duplicative of plaintiff's explicit PHRA claims in counts IV and V, see supra Part III.A, and shall be dismissed. FED. R. CIV. P. 12(f) (permitting the court to strike from a pleading any redundant, immaterial, or impertinent matter).

## IV. Conclusion

For the foregoing reasons, the court will grant in part and deny in part defendant's motion (Doc. 5) to dismiss. An appropriate order follows.

       S/ Christopher C. Conner
       CHRISTOPHER C. CONNER
       United States District Judge

Dated:       June 24, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMBER SEEGER and SCOTT ANDERSON**, individually, | : | CIVIL ACTION NO. 1:13-CV-0048 |
| Plaintiffs | : | |
| v. | : | (Judge Conner) |
| **C&S WHOLESALE GROCERS, INC.**, | : | |
| Defendant | : | |

## **ORDER**

AND NOW, this 24th day of June, 2013, upon consideration of defendant C&S Wholesale Grocer's motion (Doc. 5) to dismiss the claims of plaintiffs Amber Seeger and Scott Anderson, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. C&S's motion (Doc. 5) is GRANTED in part, and DENIED in part.

   a. The motion is GRANTED with respect to counts I, II, III, IV, and V of the complaint (Doc. 1).

   b. The motion is DENIED with respect to count VI of the complaint (Doc. 1).

                                                            S/ Christopher C. Conner
                                                          CHRISTOPHER C. CONNER
                                                          United States District Judge